## HARRY H. PAGE AND ANOTHER v. ROLLINGSTONE MUTUAL FARMERS FIRE INSURANCE COMPANY.[1]

January 29, 1926.

No. 24,927.

**Complaint for reformation of fire insurance policy sufficient.**

1. A complaint for the reformation of a fire insurance policy and the recovery for the loss of part of the property covered, adequately states facts authorizing reformation by alleging that the contract of insurance was made with plaintiffs, but that, through the mistake of defendant in issuing the policy, the name of one of plaintiffs was written incorrectly.

**Waiver of forfeiture well pleaded.**

2. A waiver of forfeiture for violating the provision of double insurance was well pleaded which stated that defendant, with knowledge of such violation and after the loss, required plaintiffs to meet defendant several times to adjust the amount of the loss, that it recognized the validity of the policy as to property covered by it and not destroyed, and finally formally canceled the policy.

**Allegation sufficient to show waiver of condition precedent to suit.**

3. The complaint averred that before suit defendant denied all liability for the loss. This sufficiently showed a waiver of arbitration, a condition precedent to suit.

Fire Insurance, 26 C. J. p. 496 n. 56.
Reformation of Instruments, 34 Cyc. p. 974 n. 50.

Action in the district court for Winona county. Defendant appealed from an order, Finkelnburg, J., overruling its demurrer to the complaint. Affirmed.

*Brown, Somsen & Sawyer*, for appellant.
*B. L. Spencer*, for respondents.

[1]Reported in 207 N. W. 24.

HOLT, J.

The appeal is from an order overruling a demurrer to the complaint, the order certifying the questions involved to be important and doubtful.

The action is to reform a fire insurance policy issued to plaintiffs by defendant and to recover for a loss by fire of part of the property covered by the policy. It is alleged that plaintiffs, the owners of the property insured, became members of defendant, a farmers mutual fire insurance company, and that the company issued to them its policy, insuring said property against destruction by fire. That defendant "inadvertently issued the same to Mary H. Page and Sula Page instead of Harry H. Page and Sula Page."

The first point is that the complaint does not state facts sufficient for reformation. We think it is made to appear that the contract of insurance was entered into between plaintiffs and defendant, and that through a simple clerical error or mistake on defendant's part, or rather of its scrivener, the true name of one of plaintiffs was written incorrectly in the policy. The policy in this respect should, under the allegations of the complaint, be reformed as a matter of course. Mahoney v. Minn. F. & M. Ins. Co. 136 Minn. 34, 161 N. W. 217; Sundin v. County F. Ins. Co. 144 Minn. 100, 174 N. W. 729; Haley v. Sharon Tp. Mut. F. Ins. Co. 147 Minn. 190, 179 N. W. 895.

The complaint confesses to additional insurance effected without notice to defendant, after the policy in question was issued, and attempts to plead a waiver of the consequences resulting from this provision in the by-laws, made a part of the contract of insurance: "In case of double insurance this Company must be notified, otherwise policy shall be void." Appellant insists that the facts alleged as constituting waiver are insufficient. This presents the most doubtful question. The substance of the allegations may be stated thus: That, after knowledge of the loss and of the additional insurance, defendant demanded of plaintiffs that they travel twice, a distance of four miles, to St. Charles and once to Winona, a distance of 24 miles, for the purpose of meeting with the authorized representative of defendant to compromise and settle the loss; that such

representatives, after the loss, examined the remaining buildings and stock covered by the policy and stated to plaintiffs that its policy was good and plaintiffs said property was thereunder protected from loss by fire; and that some months thereafter defendant, by a majority vote of its board of directors, duly canceled said policy by mailing written notice thereof to plaintiffs. Defendant contends that its request for conference meetings, thus taking plaintiffs away from their work and home in order to attempt a settlement and compromise, was not a request for anything required under the policy, and therefore could not be a basis for waiver, citing Taylor v. Grand Lodge, 96 Minn. 441, 105 N. W. 408, 3 L. R. A. (N. S.) 114; Bowman v. Surety F. L. Ins. Co. 149 Minn. 118, 182 N. W. 991. In each of those cases the principle on which respondents stand, and clearly stated in Mee v. Bankers L. Assn. of Minn. 69 Minn. 210, 72 N. W. 74, is recognized, where it is said:

"A waiver may be created by acts, conduct or declarations insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations * * * which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim a forfeiture."

But appellant insists the facts pleaded come within the rule applied in the Taylor case, viz: That the acts requested of the insured were not such as under the policy the company had a right to require of plaintiffs. The question then is, does the policy in this case require that the insured and insurer confer for the purpose of settling or adjusting a loss? The by-laws, made a part of the policy and complaint, contain this provision:

"Losses may be adjusted in the following manner: The Board of Directors may divide the territory in which this Company does business into districts and appoint three adjusters for each district, who may adjust all losses arising therein, * * *. In case of a disagreement between such adjusters and the insured as to the amount of his loss, such amount shall be determined in the manner pro-

vided by section 20 of chapter 411, General Laws of Minnesota, 1909." (G. S. 1923, § 3666.)

This section provides for arbitration after the parties fail to agree. Therefore, it seems the insurer has the right to call upon the insured for the purpose of effecting a compromise or settlement of a loss. The by-laws require such conferences before arbitration may be had. Therefore the three meetings defendant requested were meetings which the policy required plaintiffs to attend.

But to our minds more convincing facts of waiver are found in the allegations that after the loss, and with full knowledge of the additional insurance, defendant declared the policy in force as to the remaining property covered by it, and finally, after denying liability canceled the policy. These acts certainly amount to a recognition that up to the time of cancelation there had been no forfeiture. Defendant seeks to avoid this by the argument that, after the loss and with knowledge of the additional insurance, it could and did consent to double insurance as to the remaining property without waiving a forfeiture as to the part destroyed. The facts pleaded do not admit of a recognition of the validity of the policy as to the remaining property with a repudiation as to the part destroyed. The recognition was not coupled with any exception, qualification or condition. The contrary appears from the fact that conferences to adjust the loss were requested of plaintiffs. Aside from what may appear an undue desire to profit by a technical defense which defendant itself considered of no merit—for there could have been no greater moral hazard in the double insurance on the property destroyed than on that remaining—we think the policy indivisible. As a matter of law, it could not be validated in part without validating it in its entirety.

The total insurance was $11,125. The premium paid was $35, with provisions for future assessments. Such a policy was held avoided in toto, by a subsequent breach of a condition, in mortgaging a few of the articles covered. Plath v. Minn. F. M. F. Ins. Assn. 23 Minn. 479, 23 Am. Rep. 697. It was there held that the contract was indivisible, though as here the whole insurance was apportioned in

specific amounts to separate items. With that principle in mind, when defendant according to the complaint recognized the continued obligation of the contract as to the property not destroyed, no other idea could have been conveyed to plaintiffs than a waiver of the forfeiture on account of the double insurance as to all the property. Madden v. Interstate B. M. Acc. Assn. 139 Minn. 6, 165 N. W. 482, and the cases therein cited appear to sustain respondents that the facts pleaded in respect to cancelation constitute a waiver of forfeiture.

The third point, that there are no facts stated which waive arbitration, a condition precedent to suit, is readily disposed of. The demand for arbitration is not required to be made within any given time. It is not called for, unless there is disagreement as to the amount of the loss. It is true that the complaint does show that at first there was such a disagreement, but it also is made to appear that at the last conference, the one at Winona, defendant repudiated and denied any and all liability. There was then nothing left to arbitrate. All conditions precedent to suit were by that act waived. "A denial of all liability under a policy is usually treated as a waiver of the right to an appraisal." 14 R. C. L. p. 1358. The syllabus in Cash v. Concordia Fire Ins. Co. 111 Minn. 162, 126 N. W. 524, reads: "An unqualified denial of liability by the defendant upon receipt of proofs of loss was a waiver of the arbitration clause of the policy." Such denial may come with the same effect before proofs of loss are furnished. After the denial of all liability at the Winona meeting, no controversy existed as to the amount of the loss. Kelly v. Liverpool & L. & G. Ins. Co. 94 Minn. 141, 102 N. W. 380, 110 Am. St. 351. See also Moore v. Sun Ins. Office, 100 Minn. 374, 111 N. W. 260.

The order is affirmed.